### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARRY D. DAUGHENBAUGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 04-295J |
| | ) | |
| JO ANNE B. BARNHART, | ) | JUDGE GIBSON |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

# Memorandum Opinion and Order of Court

**GIBSON, J.**

This matter comes before the Court on the parties' cross-motions for summary judgment and the briefs in support thereof (Document Nos. 6-9).

This Court has jurisdiction and venue of this matter pursuant to 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g).

Barry D. Daughenbaugh (hereinafter "Plaintiff") initially filed an application for Disability Insurance Benefits (hereinafter "DIB") on November 3, 2000. R. p. 13. This application was denied in a decision dated August 22, 2001, and the Appeals Council denied the Plaintiff's request for review on November 27, 2001. R. p. 13.

The Plaintiff protectively filed applications for DIB and Supplemental Security Income (hereinafter "SSI") on November 20, 2001. R. p. 13. A hearing was held on September 9, 2002, at the Plaintiff's request. R. p. 13. In a decision dated September 25, 2002, the applications were denied, and the Appeals Council denied the Plaintiff's request for review on December 30, 2002. R. p. 13.

On November 22, 2002, the Plaintiff protectively filed for DIB and SSI, alleging disability as of July 30, 2000. R. pp. 261-264. After his claims were initially denied on April 15, 2003, the Plaintiff filed a timely request for a hearing on April 29, 2003. R. pp. 270-271. On March 29, 2004, a hearing

1

was held before Administrative Law Judge John J. Mulrooney (hereinafter "ALJ"). R. p. 32. Although the Plaintiff alleged disability as of July 30, 2001, the ALJ made his decision in the instant case "with reference to September 26, 2002, the day following the period closed to readjudication." R. p. 13. In a decision dated April 16, 2004, the ALJ determined that the Plaintiff was not under a "disability" for purposes of the Social Security Act. R. p. 25. The Appeals Council denied the Plaintiff's request for review on September 24, 2004, making the ALJ's decision the final decision of the Commissioner of Social Security (hereinafter "Commissioner") regarding the instant case. R. pp. 7-9. The Plaintiff filed a complaint in this matter on November 29, 2004, and the Commissioner filed an answer on January 26, 2005. The Plaintiff and the Commissioner filed cross-motions for summary judgment on February 25, 2005, and March 25, 2005, respectively.

A district court's review of the administrative determinations of the Commissioner is governed by the standard of whether the record contains substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 853 (1971). Substantial evidence is more than just a scintilla of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted); *see also, Stewart v. Secretary*, 714 F.2d 287 (3d Cir. 1983). In discussing this standard of review, the Third Circuit has stated:

> This oft-cited language is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g., that offered by treating physicians)–or if it really constitutes n ot evidence but mere conclusion. See *id.* at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). *De novo* review of the facts is prohibited and deference must be given to the Commissioner's findings unless there is an absence of substantial

2

evidence to support such findings in the record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986); 42 U.S.C. § 405(g).

When resolving the issue of whether a claimant is disabled and therefore entitled to DIB or SSI benefits, the Commissioner uses a five-step sequential evaluation process. The U.S. Supreme Court recently summarized this five-step process as follows:

"If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c)."

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 379-380, 157 L.Ed.2d 333, 339-340 (2003) (footnotes omitted).

In this case, the ALJ determined that the Plaintiff suffered from cervical spine degenerative disc disease, degenerative lumbar spine osteoarthritis, slight levorotatory scoliosis, bilateral knee arthritis, diabetes mellitus, obesity, a seizure disorder, depression, dysthymia, mixed personality disorder, hyperlipidemia and mild right hearing loss. R. p. 15.

The ALJ decided that the Plaintiff was not disabled at the fifth step of the sequential evaluation process. R. pp. 24-25. He determined that the Plaintiff had the residual functional capacity "to perform the exertional demands of sedentary work," but that he was limited to the following: occasional balancing, stooping, and climbing of ramps and stairs; occasional overhead reaching, pushing and

3

pulling with the lower extremities, including the operation of pedals; simple, routine, repetitive tasks, not performed in a production or quota-based environment, involving only simple work-related decisions and relatively few workplace changes; occasional interaction with supervisors, co-workers, and the general public. R. p. 24. It was further noted that the Plaintiff was limited to occupations which did not require exposure to dangerous machinery or unprotected heights, and that he needed to "avoid kneeling, crouching, crawling, and climbing ladders, ropes, and scaffolds." R. p. 24. Based on this capacity assessment and the testimony of Thomas R. Wyland, an impartial vocational expert, the ALJ determined that the Plaintiff could work as a mechanical assembler, small parts assembler, hand packer, surveillance system monitor, or sorter. R. p. 25. Mr. Wyland's testimony established that these jobs existed in significant numbers in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A). R. pp. 66-67.

The Plaintiff makes five arguments in support of his motion for summary judgment. After a thorough review of the record and the authorities relied upon by both parties in the instant case, the Court is convinced that the matter should be remanded to the Commissioner for further proceedings.

The first argument advanced by the Plaintiff is that the ALJ failed to comply with 20 C.F.R. § 404.1527 and the applicable controlling precedents in not according appropriate weight to the findings of the Plaintiff's treating physician. Br. for Plaintiff pp.18-20. This contention centers on an assessment form completed on March 24, 2004, by Dr. Richard Cassone, the Plaintiff's treating psychiatrist. Dr. Cassone completed this form upon request by the Plaintiff's counsel. R. p. 254. On the assessment form, Dr. Cassone noted that the Plaintiff had no ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently, or maintain concentration and attention. R. p. 255. Dr. Cassone also reported that the Plaintiff needed frequent reminders to perform simple tasks such as keeping appointments and taking medications, and that he tended to get panic attacks when he was around others. R. pp. 255-256. The Plaintiff's physical limitations were recorded as well, as Dr. Cassone noted that the Plaintiff was unable to lift his hands over his head and could not bend over to put on his socks. R. p. 256. Although Dr. Cassone reported that the Plaintiff's ability to maintain his personal appearance was fair, he

4

concluded that the Plaintiff was capable of managing his own benefits in an advantageous manner only because of his roommate's assistance. R. p. 256.

In his decision, the ALJ determined that Dr. Cassone's opinion was not entitled to controlling weight under 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) because it was "inconsistent with the clinical and objective findings of record" and "inconsistent with the totality of the evidence." R. p. 22. Consequently, the ALJ concluded that the Plaintiff was capable of substantial gainful activity notwithstanding Dr. Cassone's opinion to the contrary.

The applicable law governing this situation has been clearly established. In *Adorno v. Shalala*, 40 F.3d 43 (3d Cir. 1994), the U.S. Court of Appeals for the Third Circuit declared that "a statement by a plaintiff's treating physician supporting an assertion that [he or] she is 'disabled' or 'unable to work' is not dispositive of the issue." *Adorno*, 40 F.3d at 47-48. 20 C.F.R. §§ 404.1527(e)(1) and 416.927(e)(1) make it clear that "[t]he ultimate decision concerning the disability of a claimant is reserved for the Commissioner." *Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000). If the ALJ determines that a treating physician's opinion is outweighed by conflicting medical evidence in the record, he or she may choose to credit the conflicting evidence and to discredit the opinion of the treating physician. *Newhouse v. Heckler*, 753 F. 2d 283, 286 (3d Cir. 1985). If "a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," it is to be given "controlling weight." 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." 61 F.R. 34490, 34491. On the other hand, if the opinion of a treating physician is conclusory and unsupported by the objective medical evidence, the ALJ may reasonably find that it is outweighed by conflicting evidence in the record. *Jones v. Sullivan*, 954 F.2d 125, 128-129 (3d Cir. 1991).

In the instant case, the Court agrees with the Commissioner that the ALJ was not required to give Dr. Cassone's opinion controlling weight. Br. for Defendant pp. 10-12. The ALJ referred to Dr. Cassone's March 20, 2003, examination report, in which he noted that the Plaintiff had fair insight,

5

intact judgment, and normal levels of memory, attention span and concentration. R. pp. 223-224. At that time, Dr. Cassone recommended that the Plaintiff continue psychotherapy with Jeff Keiper, which was apparently already underway. R. p. 225. It was reasonable for the ALJ to find Dr. Cassone's subsequent assessment report of March 24, 2004, to be inconsistent with his earlier March 20, 2003, examination report. Given such an apparent change in Dr. Cassone's position, the ALJ was not bound by the findings recorded on the assessment form. *Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994). The Court is also mindful of the fact that Dr. Cassone completed the assessment form specifically because he had been asked to do so by the Plaintiff's attorney. R. p. 254. Given the conclusory nature of the assessment report, as well as the purpose for which it was completed, it was not unreasonable for the ALJ to question Dr. Cassone's credibility. *Saelee v. Chater*, 94 F.3d 520, 522-523 (9th Cir. 1996). For these reasons, it was proper for the ALJ to conclude that Dr. Cassone's opinion was not entitled to controlling weight. R. p. 22.

The second and third arguments advanced by the Plaintiff are closely related. The Plaintiff contends that the ALJ's opinion failed to account for his panic attacks, and that this impairment was not factored into the ALJ's determination of his residual functional capacity. Br. for Plaintiff pp. 20-22. The Plaintiff further asserts that, as a direct consequence of this alleged error, Mr. Wyland's testimony failed to account for this limitation. Br. for Plaintiff p. 22. The Commissioner responds by insisting that the ALJ fully accounted for the Plaintiff's panic attacks "by restricting him to jobs that required only occasional interaction with coworkers, supervisors, and members of the general public." Br. for Defendant p. 13. The ALJ briefly noted that the Plaintiff had allegedly suffered from panic attacks, but he did not elaborate on that allegation. R. p. 19. It is clear that, in order for a vocational expert's testimony to constitute substantial evidence, "an ALJ's hypothetical question must include all of a claimant's impairments." *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004). An ALJ may reject a purported limitation that lacks medical support "if there is conflicting evidence in the record, but should not reject a claimed symptom that is related to an impairment and is consistent with the medical record simply because there is no objective medical evidence to support it." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

6

In any event, however, the Court is satisfied that the ALJ adequately considered the Plaintiff's panic attacks. In his brief, the Plaintiff asserts that panic attacks "[m]ay occur in any anxiety disorder." Br. for Plaintiff p. 21, n. 4. This description of a panic attack is consistent with that of a *symptom* of an impairment rather than that of a distinct impairment in and of itself. In the portion of his opinion in which he discussed the Plaintiff's panic attacks, the ALJ determined that there were marked limitations on the Plaintiff's social functioning. R. p. 19. Therefore, it is apparent that the ALJ adequately accounted for the Plaintiff's panic attacks, which were considered as symptoms of an anxiety disorder rather than as a separate impairment.

The Plaintiff's fourth argument is that the ALJ failed to consider the side effects of his medications, and the effect that they had on his ability to engage in substantial gainful activity. Br. for Plaintiff pp. 22-24. In support of his position, the Plaintiff relies on *Stewart v. Secretary*, 714 F.2d 287 (3d Cir. 1983). In *Stewart*, the ALJ had made no explicit finding as to whether the medications taken by the claimant were having a serious impact on his ability to work. *Stewart*, 714 F.2d at 290. The question was dispositive because the vocational expert had testified that the claimant could not perform the duties of the relevant jobs existing in the national economy if the claimant's medications had affected him as alleged. *Stewart*, 714 F.2d at 290. Consequently, the Court of Appeals was unable to allow the ALJ's decision to stand.

The instant case, however, is clearly distinguishable from *Stewart*. In his opinion, the ALJ specifically stated that there was no evidence that the Plaintiff had experienced significant side effects from his medications, or that his medications or dosages had been altered due to side effects. R. p. 18. The existence of a specific finding on this point by the ALJ distinguishes this case from *Stewart* in a meaningful way. Furthermore, a close examination of the hearing transcript reveals that it was the Plaintiff himself who testified that his medications had not caused any serious side effects. R. p. 47. When his attorney raised the issue of side effects shortly thereafter, the Plaintiff testified that his medications had "knock[ed him] out." R. p. 48. The ALJ was concerned about the apparent inconsistency in the Plaintiff's testimony. R. p. 49. The Plaintiff explained that his medications had sometimes put him to sleep, but that he did not consider that to be a "severe" side effect, thereby

7

clarifying why he had previously testified that the medications had not produced any "bad side effects." R. pp. 47-49. The ALJ had indicated that he was not interested in hearing about "potential side effects." R. p. 47. Perhaps the Plaintiff simply misunderstood what the ALJ meant by the phrase "bad side effects." R. pp. 47-49). In any event, the Plaintiff was obviously not under the impression that his medications were having a significant effect on him.

Apparently, the ALJ based his finding that the Plaintiff had experienced no serious side effects on both an examination of the Plaintiff's medical records and the Plaintiff's own testimony at the hearing. R. p. 18. The ALJ specifically stated that he found the testimony of both the Plaintiff and Mr. Brian Dugan, the Plaintiff's roommate, to be not entirely credible. R. p. 18. Such findings, so articulated, were within the authority of the ALJ. *Van Horn v. Schweiker*, 717 F.2d 871, 873-874 (3d Cir. 1983).

The Plaintiff's fifth and final argument is that the ALJ erred in determining the Plaintiff's residual functional capacity. Br. for Plaintiff pp. 24-25. Specifically, he asserts that the ALJ erred in placing significant weight on the opinion of a state agency adjudicator even though that opinion conflicted with those of the Plaintiff's treating and examining physicians. Br. for Plaintiff pp. 24-25. As noted earlier, the Court has found that the opinion of Dr. Cassone, the Plaintiff's treating psychiatrist, was not entitled to controlling weight under 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). However, a determination that Dr. Cassone's opinion was not entitled to controlling weight does not end the inquiry. There are circumstances in which "a treating source's medical opinion [is] entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." 61 F.R. 34490, 34491. In support of his position, the Plaintiff relies heavily upon *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000). In *Morales*, the Court of Appeals explained that, "[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks omitted). In the instant case, the ALJ appears to have rejected the opinions of the Plaintiff's treating and examining physicians without relying on substantial

8

conflicting evidence.

On March 13, 2003, at the request of Disability Claims Adjudicator H. Henry, the Plaintiff was examined by Dr. Samuel Massoud. R. p. 169. Dr. Massoud ordered an x-ray of the Plaintiff's lumbar spine, which showed "slight levoratory scoliosis and osteophytes at the L3-4 level." R. pp. 173, 175. Dr. Massoud also completed an assessment form designed to evaluate the Plaintiff's ability to perform work-related activities. R. pp. 178-179. As the Plaintiff's attorney pointed out at the hearing, the assessment comments recorded by Dr. Massoud are mostly illegible. R. p. 68. It appears as if Dr. Massoud was attempting to limit the Plaintiff's lifting capacity to somewhere between five and ten pounds. R. p. 178. While it is unclear what limitations on the Plaintiff's residual functional capacity were purportedly conveyed by Dr. Massoud, he did note that the Plaintiff was apparently able to sit for only thirty minutes before having to change his position. R. p. 173. The only reliance placed on Dr. Massoud's findings by the ALJ was the observation that the Plaintiff had "used a cane but could walk without it." R. p. 18.

The ALJ did rely on an April 2, 2003, assessment by the state agency adjudicator. R. p. 21. In that assessment, the adjudicator determined that the Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. R. p. 150. The adjudicator opined that the Plaintiff could engage in occasional climbing, balancing, stooping, kneeling, crouching and crawling. R. p. 151. No manipulative, visual, communicative or environmental limitations were noted. R. pp. 151-152. The adjudicator did not give "full weight" to Dr. Massoud's determination that the Plaintiff was "able to perform exertional activity at the less than sedentary level" because he found that limitation to be inconsistent with "all of the medical and non-medical evidence in the claims folder." R. pp. 154-155. Apparently, the adjudicator was convinced that Dr. Massoud had relied too heavily on "the subjective report of symptoms and limitations provided by the claimant." R. p. 155.

The ALJ acknowledged that the adjudicator had not been "afforded an opportunity to review the medical evidence received subsequent to this determination, or to observe and hear the claimant at the hearing." R. p. 21. Nevertheless, the ALJ determined that "[t]hese subsequent reports and

9

testimony confirmed the residual functional capacity assessment" ultimately adopted by the Commissioner. R. p. 21. Unfortunately, he did not specify what "subsequent reports and testimony" he was relying on. The ALJ did note, in an earlier portion of his opinion, that Dr. Kevin A. Sugalski had reported that the Plaintiff's "diabetes mellitus was controlled." R. p. 17. The problem is that no explanation was ever given by the ALJ regarding the relationship between this finding and the Plaintiff's residual functional capacity. Information that was relevant to the dispositive issue in the administrative proceedings was apparently ignored. For instance, on January 31, 2002, Dr. Sugalski noted that the Plaintiff had tried to return to work but had become "too symptomatic to continue" after standing on concrete for several hours. R. p. 191. With regard to the testimony in this case, Mr. Brian Dugan, the Plaintiff's roommate, corroborated the Plaintiff's allegations. R. pp. 58-64. The vocational expert, Thomas R. Wyland, testified about the jobs available to someone with a given residual functional capacity. R. pp. 64-68. Mr. Wyland's testimony had absolutely nothing to do with the determination of what residual functional capacity was specifically applicable to the Plaintiff. That is not the role that a vocational expert plays in the adjudicatory process. Consequently, it is not clear what "subsequent reports and testimony" the ALJ relied upon to support the residual functional capacity that he found for the Plaintiff. R. p. 21.

The record does contain some evidence that the Plaintiff may have been capable of substantial gainful activity. As the ALJ pointed out, the Plaintiff left his prior job not because of a health problem, but rather because the company that he worked for had closed. R. p. 18. Dr. Robert Rundorff, who performed an electromyographic examination on the Plaintiff, reported on November 18, 2002, that "[t]he study performed was within normal limits" and that there was "no evidence of a lombosacral radiculopathy or a peripheral polyneuropathy." R. pp. 196-197. Dr. Howard Forman, who performed an MRI on the Plaintiff in October, 2002, found "no compromise of the central lumbar spinal canal or significant lumbar neural foraminal narrowing." R. p. 198. Dr. Forman likewise reported that the Plaintiff's cervical cord appeared to be normal and that the cervical neural foramina were "patent bilaterally." R. p. 199. Dr. Jonathan Abrahams, who provided a radiologic interpretation of the Plaintiff's physical condition on November 7, 2001, found only "very minor disc space narrowing at

10

C2-C3," no "developmental anomalies," no "neural foramen encroachment," and no "evidence of spondylolysis [or] spondylolisthesis." R. p. 200. With regard to the Plaintiff's left knee, Dr. Nirmal Mital found that there were no acute fractures, no "periarticular calcifications," and no "signs of bony erosion." R. p. 201. Dr. Mital further reported that the Plaintiff's joint spaces were "within normal limits." R. p. 201. Although these findings were referenced in the ALJ's opinion, it is not clear whether they were a part of the "subsequent reports" specifically relied upon by the ALJ to support his residual functional capacity finding. R. pp. 17, 21. The reference to these diagnostic findings appears not in the portion of the opinion discussing the Plaintiff's residual functional capacity, but rather in the portion of the opinion describing the various impairments suffered by the Plaintiff. R. p. 17. What is clear, however, is that the ALJ placed significant weight on the opinion of a state agency adjudicator who had opted to discredit the very examining physician who he had previously chosen for the task of assessing the Plaintiff's capacity for work. R. pp. 21, 154-155, 169.

The Court cannot affirm a decision of the Commissioner "if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). The ALJ is charged with the duty to determine what evidence is credible, but he cannot "draw his own medical conclusions based solely on a credibility determination and the pieces of the examination reports" that tend to support his determination. *Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000). Where there is "conflicting probative evidence in the record," there is "a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions." *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). The ALJ's finding of residual functional capacity must always "be accompanied by a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Consequently, the Court must remand this case to the Commissioner for further proceedings.

On remand, the Commissioner must further explore the issue of the Plaintiff's residual functional capacity. As the Plaintiff's attorney stated at the hearing, Dr. Massoud apparently opined that the Plaintiff could only lift between five and ten pounds. R. p. 68. The jobs described by Mr.

11

Wyland, the vocational expert, would require the Plaintiff to lift up to ten pounds. R. p. 68. The ALJ noted in his opinion that, under sedentary work rules, "the claimant cannot lift more than ten pounds." R. p. 21. This difference in weight, though seemingly trivial in many respects, is important in this case. The state agency adjudicator, in a letter to the Plaintiff dated February 12, 2003, explained that the Plaintiff's scheduled examination with Dr. Massoud was designed to provide the agency with the specific medical information needed for the agency to determine whether the Plaintiff was disabled for purposes of the Social Security Act. R. p. 169. This was an implicit acknowledgment that such a determination could not be made without additional medical evidence. When the findings of this examination were ultimately provided, the adjudicator discounted them on the ground that Dr. Massoud had "relied heavily on the subjective report of symptoms and limitations provided by the claimant." R. p. 155.

It may be true that Dr. Massoud's purported finding that the Plaintiff could only lift between five and ten pounds was based more on the Plaintiff's statements than it was on his own independent observations. R. p. 173. Notwithstanding that possibility, the ALJ never explained why a state adjudicator who admittedly needed more information to make an assessment regarding the Plaintiff's residual functional capacity was viewed as credible after discounting the very information that was originally deemed to be essential to that underlying determination. The Commissioner is free to reject Dr. Cassone's conclusion on the basis of conflicting medical evidence, but she must identify what conflicting medical evidence prompts her to do so. "The Commissioner cannot reject [the treating physician's] medical opinion simply by having the ALJ make a different medical judgment." *Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000). Accordingly, pursuant to the authority vested in this Court under 42 U.S.C. § 405(g), the decision of the Commissioner is hereby reversed, and the case is remanded to her for further proceedings consistent with this opinion.

An appropriate order follows.

12

**AND NOW**, this 7th day of June, 2006, this matter coming before the Court on the parties' cross-motions for summary judgment, IT IS HEREBY ORDERED THAT: 1) the Plaintiff's Motion for Summary Judgment (Document No. 6) is DENIED and his alternative Motion for Remand (Document No. 6) is GRANTED and this case is remanded for further consideration in accordance with this Memorandum Opinion; 2) the Defendant's Motion for Summary Judgment (Document No. 8) is DENIED.

         **BY THE COURT:**

         **KIM R. GIBSON,**
         **UNITED STATES DISTRICT JUDGE**